## COMER v. TABLER et al.

(Circuit Court, E. D. Tennessee, S. D. November 29, 1890.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY.
   A deed of assignment which is voidable because the accompanying schedules are defective is good as to the assignor until attacked by creditors, and a second deed from him before the first one has been attacked passes no title, even though the assignee has not taken possession of the property.

2. SAME—PREFERENCES.
   Under the Tennessee statute, which declares that "preferences of creditors in general assignments of all a debtor's property shall be illegal and void," an assignment containing preferences is only voidable.

3. SAME—RIGHTS OF CREDITORS
   The preferred creditors are entitled to their ratable share of the assigned property, in spite of the illegal preference.

4. SAME—POWER OF ASSIGNEE.
   Where an assignee does not accept the trust, a conveyance by him of the assigned property, contrary to the terms of the assignment, passes no title.

In Equity.

*F. S. Yager* and *Young & Bogle*, for complainant.

*Robt. P. Woodard*, for defendants.

KEY, J. The determination of this case depends upon the effect to be given to certain deeds which have been given in evidence. D. G. Crudup and J. H. Tabler were the members of a firm styled "D. G. Crudup & Co." and of another firm styled "Tabler, Crudup & Co." They were also the owners of the capital stock of a corporation known as the "Tabler-Crudup Coal & Coke Company." On the 30th of July, 1887, all these concerns executed a deed to W. E. Baskette and T. H. Ewing, as trustees, conveying—

"All the property we own, of every kind, character, and description, both firm and individual property, except that exempt from execution under the exemption and homestead laws of Tennessee, including all our personalty, stocks, bonds, choses in action, realty, and interest in realty."

The Tabler-Crudup Coal & Coke Company conveyed to said trustees all of its property of every character and description. The—

"Conveyance is made for the following uses and trusts, and none other; that is to say, the said bargainors, D. G. Crudup & Co., Tabler, Crudup & Co., and the Tabler-Crudup Coal & Coke Company, are largely indebted. Therefore, to secure to their creditors an equal distribution of their assets, and to enable all the creditors to be paid the full amount, they, the said bargainors, desire to make and do hereby make to said trustees or the survivor of them, or the one qualifying as such, all their property as a general assignment for the benefit of their creditors, to be equally shared between them in proportion to the amounts of their respective debts. The property belonging to the Tabler-Crudup Coal & Coke Company will be applied to the payment of the debts of said company, and the assets and property of D. G. Crudup & Co. and Tabler, Crudup & Co. will first be applied to the payment of the creditors of these two firms and the individual indebtedness of J. H. Tabler and D. G. Crudup, and where they are indorsers for the Tabler-Crudup Coal & Coke Co.; and, if the property of the said Coal & Coke Company fails to pay and satisfy the creditors of said coke company, the property of said Crudup & Co. and Tab-

ler-Crudup Company shall be sold to satisfy the creditors of said Coal & Coke Company."

The deed gives a description of the property conveyed, and has attached to it lists of said property and of the debts secured; and on the date of the execution of the deed, T. H. Ewing, one of the trustees named, agreed to accept the trust created. On the 22d of October, 1887, J. H. Tabler and D. G. Crudup executed another deed, which purports to convey to R. P. Woodard a part of the property embraced in the other deed. The new deed assumes "that neither of the assignees has taken charge of the property assigned to them, nor assumed to execute the trusts; and it is the intention of Tabler & Crudup to arrange with their creditors to save expense, and avoid the execution of said assignment." This deed provides that the proceeds of the property shall be, to a considerable extent, differently applied than under the terms of the first deed. It is admitted that the benefits of the new deed extended almost exclusively to the mercantile creditors of the bargainors therein. The first deed, admitting that its schedules of property and lists of debts, and the affidavits thereto, are defective to the extent insisted upon by complainants, is not absolutely void, so as to allow the bargainors therein, or any of them, to disregard its provisions. It is voidable only, at the most, and, if no creditor places himself in a position of positive and direct antagonism to the terms of assignment, its provisions may be carried out. The debtors, having parted with the title to their property for the benefit of their creditors, cannot resume that title at their pleasure without the assent of those for whose benefit the conveyance was made, since they are presumed to have accepted the assignment. The death of the trustee, or his refusal to accept the trust, does not change or defeat the deed. The trust remains, whether there be a trustee or not; and a court of equity may execute the trust, or appoint a trustee who can and will. It is clear that the second deed and the deed supplemental thereto were executed without power in the bargainors to execute them, and that both are void to all intents and for all purposes. The deed of assignment, however, is not void, but voidable, at most. The statute of the state declares "that preferences of creditors in general assignments of all a debtor's property shall be illegal and void;" but this does not necessarily make the assignment invalid. Any mortgage, deed in trust, or other conveyance of a portion of a debtor's property for the benefit of any particular creditor or creditors, made within three months preceding a general assignment, and in contemplation thereof, shall be void should a general assignment be made within three months; yet in both cases the conveyances would be operative against the bargainor unless some creditors, or trustee or assignee for the creditors, institute appropriate proceedings to have them declared void.

The question arises, then, in this case, have we a proceeding which authorizes the court to declare the general assignment void? The complainant has not put himself in a position of antagonism to the deed. He seeks no relief other than he can have under the deed, or other than other creditors may have under it. If the assignment be declared void,

he would have only the relief he will have should it be sustained. He is an objector, not an antagonist. He has no attachment or other lien, —no position dissimilar to the other creditors in the assignment. The assignment provides that the assets and property of D. G. Crudup & Co. and Tabler, Crudup & Co., and the individual property of Tabler and Crudup, shall be applied to their individual and firm debts, and to the debts of the coal and coke company which the firms of Tabler and Crudup have indorsed, and thus became liable for; and not until all such debts are satisfied, do any of the proceeds of their property go to the payment of the coal and coke company.

It is insisted that complainant can have no relief because he seeks to set aside the deed. It is true that, when one beneficiary interested under an assignment, mortgage, or deed of trust attempts to set aside the conveyance, he is not entitled to take anything under it, because he has declined to accept its provisions. But, as already stated, complainant has not instituted proceedings to invalidate the deed. If it were to be held that he could not take under the assignment, the same argument would exclude the creditors embraced in the conveyance to Woodard. They do not claim under the deed of assignment. They do not accept its provisions, but they claim under the deed to Woodard, which they insist supersedes and abrogates, so far, at least, as they are concerned, the deed of assignment. However, under the decision of the supreme court in the case of *White* v. *Cotzhausen*, 129 U. S. 345, 9 Sup. Ct. Rep. 309, the creditors provided for in the deed of trust, whose debts are included in the general assignment, are entitled to their ratable share in the distribution of the funds under the assignment. In the decision referred to it is said:

"The circuit court proceeded upon the ground that the conveyances, bill of sale, confessions of judgment, and transfers by Alexander White, Jr., were made without adequate consideration, and with intent to hinder, delay, and defraud the appellee. Upon these grounds it gave him a prior right in the distribution of the property. We are not able to assent to this determination of the rights of the parties, for the mother, sisters, and brother of Alexander White, Jr., were his creditors, and, so far as the record discloses, they only sought to obtain a preference over other creditors. But their attempt to obtain such illegal preference ought not to have the effect of depriving them of their interest, under the statute, in the proceeds of the property in question, or justify a decree giving a prior right to the appellee. It was not intended by the statute to give priority of right to the creditors who were not preferred."

This adjudication was made in a suit which arose under the voluntary assignment act of the state of Illinois, which is, in its provisions generally, similar to the Tennessee statute. The complainant and the creditors in the trust-deed, who are provided for by the deed of assignment, are alike entitled to their ratable share of the proceeds of the property included in the assignment. The execution of the deed by Baskette did not change or have any effect upon the title to the property. He had never accepted the trust. On the contrary, he repudiates any acceptance of it in his deed. Hence he had no authority to execute the paper.

If, however, his office or trust had any vitality as to him, it was such only as the deed of assignment gave him, and that was to execute the trust and to effectuate its terms. No authority, express or implied, was given him to nullify or destroy the instrument that created him. To do so would be a species of legal suicide.

The conclusion is that the deed of general assignment is not void or avoided, but that it is in force; that under it the creditors of Crudup, Tabler, and their two firms, including those who hold debts upon which they, or either of them, are sureties or indorsers, are entitled to a *pro rata* distribution of the proceeds of the property sold, after deducting the money paid in the discharge of prior liens and incumbrances upon the property, including taxes thereon, and a compensation of $350 to Woodard as receiver,—one-half of this compensation to be paid out of the money in his hands, or which may first come to his hands, and the other half out of the funds which may last come to his hands. The costs of the case will be paid out of the funds. The clerk, as special master, will hear proof, and report what debts are provided for, as indicated herein, to whom they are due, and the respective amounts due. He will also report whether there is any other property or assets embraced in the general assignment available, the proceeds of which may be applied to the aforesaid debts. If so, give a description thereof. He may bring before him as witnesses Crudup, Tabler, and any other persons he may deem proper. He may also report as to the amount due complainant, and the credits thereon. The receiver, Woodard, will be required to make but two payments in the distribution of the proceeds of the property sold by him,—one when the amount of the debts are ascertained, and to whom due, the other, when all the funds have been collected.